Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| CARLOS A. ROSADO VEGA  Recurrido  v.  INSTITUTO SOCIOECONÓMICO COMUNITARIO, INC. H/N/C INSEC  Recurrente | TA2026RA00273 | *Revisión* procedente de la Oficina de Mediación y Adjudicación del Departamento del Trabajo y Recursos Humanos  Caso Núm.: AC-23-159  Sobre: Despido Injustificado |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de junio de 2026.

Comparece el Instituto Socio-Económico Comunitario, Inc. (INSEC o parte recurrente) mediante un *Recurso de Revisión* para solicitarnos la revisión de la *Resolución y orden* emitida el 17 de marzo de 2026, notificada el 20 del mismo mes y año, por la Oficina de Mediación y Adjudicación (OMA) del Departamento del Trabajo y Recursos Humanos de Puerto Rico (Departamento).[1]

Mediante el dictamen recurrido, la OMA declaró *Ha Lugar* la *Querella* interpuesta por el señor Carlos A. Rosado Vega (señor Rosado Vega o recurrido). En consecuencia, ordenó a INSEC a compensar al recurrido, al amparo de la Ley Núm. 80,[2] la cantidad de $16,373.08 dólares, por concepto de despido injustificado, en el término de treinta (30) días, a partir de que el dictamen adviniese final y firme. Además, ordenó el pago de intereses, computados

---

[1] Sistema Unificado de Manejo y Administración de Casos en el Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1, Apéndices 2 y 3.
[2] Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a *et seq.*

desde que se ordenó el pago de las reclamaciones y hasta que fuese satisfecho.

Por los fundamentos que expondremos, se *confirma* la *Resolución y Orden* recurrida.

I

El caso del título tuvo su génesis, el 13 de octubre de 2023, cuando el señor Rosado Vega interpuso la *Querella* AC-23-159 contra INSEC.[3] Alegó haber sido empleado de INSEC desde el 1 de mayo de 2017, hasta el 28 de noviembre de 2022. Esbozó haber sido despedido injustificadamente, recibiendo una carta de despido el 28 de noviembre de 2022. Solicitó como remedio que se le concediera la suma de $16,373.10 dólares, cantidad que alegó haberle solicitado de forma extrajudicial a INSEC.

Subsiguientemente, el 5 de diciembre de 2023, la OMA emitió *Notificación de querella y vista administrativa.*[4] Mediante esta notificación, ordenó a INSEC a presentar su contestación a querella y señaló vista administrativa.

Así las cosas, el 14 de diciembre de 2023, INSEC presentó su *Contestación a querella.*[5] Aceptó algunas de las alegaciones contenidas en la *Querella* y negó otras. Arguyó que el despido fue justificado y fue producto de un largo proceso de disciplina progresiva que incluyó amonestaciones, reprimendas escritas, suspensiones de empleo y sueldo, hasta finalmente su despido. Esgrimió que la causa de acción incoada por el señor Rosado Vega era frívola y temeraria, por lo que se le debía imponer el pago de honorarios de abogado. Peticionó que la *Querella* fuese denegada.

Pasado algún tiempo, la vista administrativa fue celebrada el 3 de febrero de 2025. A la misma comparecieron ambas partes.

---

[3] SUMAC TA, a la Entrada Núm. 1, Apéndices 1 y 5, págs. 4-5.
[4] *Íd.,* a las págs. 1-3.
[5] *Íd.,* Apéndice 6.

Durante la vista, la OMA recibió como prueba testifical, el testimonio del señor Rosado Vega. En cuanto a INSEC, recibió como prueba testifical, el testimonio del señor Javier R. Rodríguez Rivera, director de administración y recursos humanos de INSEC.

Por otro lado, la prueba documental de INSEC consistió en quince (15) piezas de evidencia,[6] mientras que la prueba documental del señor Rosado Vega consistió en tres (3) piezas de evidencia.[7]

Producto de la vista celebrada, el 17 de marzo de 2026, notificada el 20 del mismo mes y año, la OMA emitió la *Resolución y orden* que nos ocupa.[8] Mediante el dictamen recurrido, la OMA declaró *Ha Lugar* la *Querella* interpuesta por el señor Rosado Vega. Dispuso, además, que INSEC venía obligado a compensar al recurrido, al amparo de la Ley Núm. 80,[9] la cantidad de $16,373.08 dólares, por concepto de despido injustificado, para lo cual concedió treinta (30) días, a partir de que el dictamen adviniese final y firme.

---

[6] SUMAC TA, a la Entrada Núm. 1, Apéndices 2 y 3, págs. 3 y 4. Surge de los autos que la prueba presentada por la parte apelante fue la siguiente: Exhibit Núm. 1 – Carta de despido dirigida al querellante, Carlos Rosado Vega, con fecha de 28 de noviembre de 2022; Exhibit Núm. 2 - Comunicación escrita dirigida al querellante, con fecha de 2 de noviembre de 2022; Exhibit Núm. 3 – Protocolo de entrega de segunda tarjeta de proyecto CARES, municipio de Adjuntas, recibido el 7 de octubre de 2022; Exhibit Núm. 4 - Comunicación escrita dirigida al querellante, con fecha de 6 de octubre de 2022; Exhibit Núm. 5 - Comunicación escrita dirigida al querellante, con fecha de 24 de junio de 2022; Exhibit Núm. 6 - Notificación Sobre Medidas Disciplinarias, dirigida al querellante, suspensión de treinta (30) días; Exhibit Núm. 7 - Comunicación escrita remitida a la Lcda. Laysha Seguinot Méndez, directora ejecutiva de INSEC, suscrita por Eric Marrero Molinelli, director de programa de servicios, con fecha de 27 de junio de 2022; Exhibit Núm. 8 - Notificación de cambio dirigida al querellante, con fecha de 19 de febrero de 2020; Exhibit Núm. 9 – Comunicación escrita dirigida al querellante, por incumplimiento con procedimientos administrativos y comportamiento ético, con fecha de 2 de diciembre de 2019; Exhibit Núm. 10 - Amonestación escrita, dirigida al querellante, con fecha de 29 de agosto de 2019; Exhibit Núm. 11 - Comunicación escrita por tardanza en la reunión de coordinadores, con fecha de 23 de agosto de 2019; Exhibit Núm. 12 - Amonestación escrita dirigida al querellante, con fecha de 22 de mayo de 2019; Exhibit Núm. 13 - Amonestación escrita dirigida al querellante, con fecha de 8 de marzo de 2019; Exhibit Núm. 14 - Comunicación escrita dirigida al querellante por incumplimiento con la fecha de entrega de las metas programáticas, con fecha de 3 de mayo de 2017, y Exhibit Núm. 15 – Copia de acuse de recibo suscrita por el querellante y la empresa, con fecha de 16 de mayo de 2017.

[7] SUMAC TA, a la Entrada Núm. 1, Apéndice 2, págs. 4-5. Surge de los autos que la prueba presentada por la parte recurrida fue la siguiente: Exhibit Núm. 1 - Certificado médico del querellante con fecha de 15 de agosto de 2022; Exhibit Núm. 2 – Certificado médico del querellante con fecha de 2 de noviembre de 2022, y Exhibit Núm. 3 – Certificado médico del querellante con fecha de 14 de noviembre de 2022.

[8] SUMAC TA, a la Entrada Núm. 1, Apéndices 2 y 3.

[9] Ley Sobre Despidos Injustificados, *supra.*

Además, ordenó el pago de intereses, computados desde que se ordenó el pago de las reclamaciones y hasta que fuese satisfecho.

Como parte del dictamen objeto de revisión, la OMA emitió las siguientes veintitrés (23) determinaciones de hechos:

1. El querellante trabajó desde el 1 de mayo de 2017 hasta el 28 de noviembre de 2022 para el INSTITUTO SOCIOECONÓMICO COMUNITARIO, INC. INSEC.
2. Al momento del despido el querellante se desempeñaba como *Gerente de Área de Servicio Sur IV en el Departamento de Programas y Servicios* de INSEC.
3. El querellante devengaba una compensación legal de DIECIOCHO DÓLARES CON SESENTA Y UN CENTAVOS ($18.61) por hora.
4. El salario semanal del querellante era de SETECIENTOS CUARENTA Y CUATRO DÓLARES CON VEINTITRÉS CENTAVOS ($744.23).
5. El querellante trabajó cinco (5) años y seis (6) meses para la parte querellada.
6. El querellante trabajaba una jornada laboral a tiempo completo mediante contrato a tiempo indeterminado.
7. El querellante estaba encargado de la repartición de tarjetas de ayuda económica a los miembros de las comunidades seleccionadas para dicho beneficio.
8. El querellante hacía entrega de las tarjetas de ayuda económica según un listado provisto.
9. El día 4 de junio de 2022, el querellante entregó tarjetas de alimentos del proyecto CARES en el barrio Yahuecas en Adjuntas, Puerto Rico, a unas setenta (70)[10] personas aproximadamente a las que no le correspondía en ese momento.
10. Para el momento de la entrega en controversia en el mes de junio de 2022, la empresa no contaba con un protocolo de entrega de tarjetas de ayuda económica.
11. El protocolo de la empresa para la segunda entrega de tarjetas del proyecto CARES para el municipio de Adjuntas fue entregado a la parte querellante el 7 de octubre de 2022.
12. Al querellante le fue impartida la directriz de que[,] en o antes del 29 de julio de 2022[,] debía completar la gestión de visitar a las personas que se le entregó la ayuda que no les correspondía en ese momento y que levantara un expediente como participantes para poder justificar adecuadamente la entrega de la ayuda.
13. El proceso de levantar expedientes subsanaría el hecho de la entrega de la ayuda económica a las personas que en aquel momento no les correspondía.
14. Las personas a las que no le correspondía la entrega se le cumplimentaba una solicitud de servicio, se le levantaba un expediente y se justificaba oficialmente la entrega por razón de ser residentes de la zona de entrega.
15. El 1 de julio de 2022[,] el querellante fue suspendido de empleo y sueldo por treinta (30) días y debía reintegrarse a sus labores el 1 de agosto de 2022.
16. Por haber estado suspendido de empleo y sueldo durante el mes de julio de 2022, el querellante no pudo cumplir con la directriz impartida para que en o antes del 29 de julio de 2022 entregara los expedientes de las personas a las que se le entregó la ayuda económica que no les correspondía.

---

[10] Se hace constar que en esta Determinación de Hecho se incluyó una nota al calce que lee como sigue: "El número inicial fue de noventa y seis (96) personas, no obstante, surgió en la vista administrativa que había nombres que se repetían y/o que no correspondían".

17. El 1 de agosto de 2022, el querellante informó que estaba atravesando por una condición de salud que fue justificada mediante certificado médico y que excusaba al querellante de reportarse a sus labores desde el 1 de agosto de 2022 hasta el 19 de agosto de 2022.

18. El 22 de agosto de 2022 el querellante se reincorporó a sus labores y se le comunicó la necesidad de la empresa de que el querellante presentara los expedientes que le fueron solicitados que levantara.

19. El 6 de octubre de 2022[,] le fue entregada una comunicación escrita (Exhibit Núm. 4 de la parte querellada) al querellante indicando que solamente había logrado levantar expedientes a veinticinco (25) personas. Se le concedió hasta el 31 de octubre de 2022 para que levantara la totalidad de los expedientes de las personas a las que no les correspondía la ayuda económica en el momento que fue entregada.

20. El 28 de noviembre de 2022, el querellante fue despedido por no haber completado los expedientes de la entrega de las ayudas económicas.

21. El querellante fue despedido por incumplimiento con las directrices impartidas por el patrono para que se subsanara la entrega de tarjetas de ayudas económicas a ciertas personas de la comunidad a las que no le correspondía la ayuda en el momento en que les fue entregada.

22. Inconforme con su despido, el querellante instó una reclamación ante la OMA por concepto de despido injustificado al amparo de la Ley Núm. 80.

23. Reclamó una mesada básica ascendente a OCHO MIL NOVECIENTOS TREINTA DÓLARES CON SETENTA Y OCHO CENTAVOS ($8,930.78), correspondiente a tres (3) meses de sueldo por haber ocurrido el despido con posterioridad a los primeros cinco (5) años de servicio. Además, reclamó una indemnización progresiva de diez (10) semanas (dos por cada año de servicio prestado a la empresa), equivalente a SIETE MIL CUATROCIENTOS CUARENTA Y DOS DÓLARES CON TREINTA ($7,442.30), para un total ascendente a DIECISÉIS MIL TRESCIENTOS SETENTA Y TRES DÓLARES CON OCHO CENTAVOS ($16,373.08).[11]

La OMA concluyó que, aun cuando negarse a cumplir con una directriz impartida por un supervisor o superior es una conducta inaceptable y reprobable, la orden debió haber sido una razonable, así como que la forma en que no fue acatada no debió haber sido por actos de la propia empresa, provocando que haya sido una exigencia irrazonable. En esa línea, razonó que el señor Rosado Vega nunca se negó ni demostró conducta contumaz, temeraria o de indisciplina; y que este intentó dentro de sus capacidades y limitaciones cumplir con la directriz impartida.

---

[11] SUMAC TA, a la Entrada Núm. 1, Apéndices 2 y 3, págs. 19-22.

Recapituló que el señor Rosado Vega fue suspendido durante el primer término que se le concedió para cumplir la directriz, luego, a su regreso, estuvo tres (3) semanas fuera por razón de enfermedad. Después, el municipio dejó de colaborar con INSEC para obtener la información para levantar los expedientes, y no fue hasta octubre que se logró reestablecer la comunicación. Mientras tanto, juzgando la urgencia de obtener la información, no se hizo, sino que esperaron al regreso del señor Rosado Vega a su trabajo. No habiendo logrado levantar la suma total de expedientes, fue despedido el 28 de noviembre de 2022.

Por otro lado, la OMA juzgó que la medida impuesta por INSEC contra el señor Rosado Vega fue una sumamente drástica. Consideró que el señor Rosado Vega tuvo razones que justificaban el no haber podido completar la tarea que le fue encomendada y que, conforme a la prueba recibida, esta fue la única razón por la cual se le despidió. Concluyó que INSEC no logró rebatir la presunción de despido injustificado. En otras palabras, no logró demostrar que el despido fue uno razonable. Destacó que la medida disciplinaria impuesta al señor Rosado Vega, fue una extrema que no guardó proporción válida entre la falta cometida y las circunstancias que le impidieron cumplir con la tarea encomendada, dentro del término exigido por sus supervisores. Finalizó expresando que, mientras el señor Rosado Vega estuvo suspendido durante el mes de julio de 2022, luego ausente por motivos de salud y ante la dificultad para preparar las listas sin el insumo del municipio, INSEC estuvo cinco (5) meses de brazos cruzado, para luego proceder a penalizarlo con la medida disciplinaria más drástica y severa que es el despido.

En desacuerdo con lo resuelto, el 9 de abril de 2026, INSEC instó una *Moción de reconsideración.*[12] Según esbozó la parte

---

[12] SUMAC TA, a la Entrada Núm. 1, Apéndice 4.

recurrente, la OMA no actuó sobre su pedimento por lo que se entendía como rechazado de plano.

Así las cosas, el 26 de mayo de 2026, compareció ante nos la parte recurrente mediante un *Recurso de Revisión* en el cual alzó los siguientes cuatro (4) señalamientos de error:

PRIMER ERROR:
ERRÓ LA OFICINA DE MEDIACIÓN Y ADJUDICACIÓN AL CONCLUIR QUE EL DESPIDO DEL RECURRIDO FUE INJUSTIFICADO, A PESAR DE LA PRUEBA SUSTANCIAL PRESENTADA POR INSEC DEMOSTRATIVA DE INCUMPLIMIENTO REITERADO, INSUBORDINACIÓN Y VIOLACIÓN A DIRECTRICES IMPARTIDAS POR EL PATRONO RELACIONADAS CON EL MANEJO Y DOCUMENTACIÓN DE AYUDAS SUFRAGADAS CON FONDOS FEDERALES.

SEGUNDO ERROR:
ERRÓ LA OFICINA DE MEDIACIÓN Y ADJUDICACIÓN AL NO CONSIDERAR ADECUADAMENTE LA NATURALEZA DE INSEC COMO ENTIDAD ADMINISTRADORA DE FONDOS FEDERALES SUJETA A ESTRICTOS REQUISITOS DE CUMPLIMIENTO, MONITORÍA Y ELEGIBILIDAD DE PARTICIPANTES, ASÍ COMO EL IMPACTO DE LAS ACTUACIONES DEL RECURRIDO SOBRE DICHAS OBLIGACIONES REGULATORIAS.

TERCER ERROR:
ERRÓ LA OFICINA DE MEDIACIÓN Y ADJUDICACIÓN AL ACTUAR DE MANERA ARBITRARIA Y CAPRICHOSA AL NO ADJUDICAR EL PESO CORRESPONDIENTE A LA PRUEBA DOCUMENTAL Y TESTIFICAL RELACIONADA CON EL HISTORIAL DISCIPLINARIO DEL RECURRIDO, ASÍ COMO AL PROCESO DE DISCIPLINA PROGRESIVA IMPLEMENTADO POR INSEC PREVIO AL DESPIDO, EL CUAL EVIDENCIABA INCUMPLIMIENTOS REITERADOS, INSUBORDINACIÓN Y VIOLACIONES A NORMAS Y PROCEDIMIENTOS INTERNOS DE LA INSTITUCIÓN.

CUARTO ERROR:
ERRÓ LA OFICINA DE MEDIACIÓN Y ADJUDICACIÓN AL ABUSAR DE SU DISCRECIÓN AL EMITIR CONCLUSIONES DE DERECHO INCOMPATIBLES CON SUS PROPIAS DETERMINACIONES DE HECHO Y CON LA EVIDENCIA SUSTANCIAL CONTENIDA EN EL EXPEDIENTE ADMINISTRATIVO.

Mediante *Resolución* emitida el 28 de mayo de 2026, concedimos a la parte recurrente hasta el 1 de junio de 2026, para informar si presentaría transcripción de la prueba oral y un alegato suplementario. De informar que se presentaría la transcripción, le concedimos hasta el 11 de junio de 2026, para así hacerlo y que presentada la misma, la parte recurrida tendría el término de diez (10) días para presentar sus objeciones o se entendería la misma

como estipulada. Por otro lado, decursado el término concedido sin que se cumpliese con lo ordenado, dispusimos que se entendería renunciado y la parte recurrida procedería a presentar su alegato en oposición, cuyo término vencería el 25 de junio de 2026.

Habiendo decursado el término sin que la parte recurrente cumpliese con nuestra *Resolución* del 28 de mayo de 2026, mediante *Resolución* emitida el 2 de junio de 2026, dispusimos tal y cual advertido, entendimos que la parte recurrente renunciaba a presentar la transcripción de la prueba oral y alegato suplementario, por lo que ordenamos a la parte recurrida a presentar su alegato en oposición en el término provisto.

Por su parte, el 25 de junio de 2026, compareció la parte recurrida mediante *Moción se declare no ha lugar el recurso de revisión y asumiendo representación legal.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

**A. La Revisión Judicial**

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia mediante revisión judicial es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[13] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[14] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[15] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus

---

[13] *Asoc. Condómines v. Meadow Dev.*, 190DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 736 (2010).
[14] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[15] *Asoc. Condómines v. Meadows Dev.,* supra, a la pág. 847.

funciones conforme a la ley y de forma razonable.[16] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[17]

A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[18] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[19]

Es norma sabida que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[20] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[21] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[22] Ahora bien, lo anterior únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el

---

[16] *Empresas Ferrer v. ARPe,* 172 DPR 254, 264 (2007).
[17] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018).
[18] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias. V. Caribe Specailty et al. II,* 179 DPR 923, 940 (2010); *Mun. de San Juan v. JCA*, 149 DPR 263, 279-280 (1999).
[19] *Asoc. Vec. Altamesa Este v. Mun. de San Juan,* 140 DPR 24, 34 (1996).
[20] *Rolón Martínez v. Supte. Policía,* supra, a la pág. 35.
[21] *Íd.*
[22] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

expediente administrativo.[23] En cuanto a la evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[24] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[25] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[26] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[27]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[28] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[29] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia

---

[23] *Otero v. Toyota*, 163 DPR 716, 727 (2005).

[24] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota,* supra, a la pág. 728.

[25] *Assoc. Ins. Agencies, Inc. v. Com. Seg. PR*, 144 DPR 425, 437 (1997).

[26] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).

[27] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

[28] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

[29] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).

por el suyo.[30] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[31] Lo anterior fue reiterado por nuestro Tribunal Supremo cuando expresó que "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos."[32]

Establecido lo anterior, es de ver que los foros apelativos deberán intervenir con las decisiones de las agencias administrativas cuando: (i) la decisión no esté basada en evidencia sustancial; (ii) la agencia haya errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal, o (iv) la actuación administrativa lesiona derechos constitucionales fundamentales.[33] Entiéndase que, aunque los tribunales están llamados a conceder cierta deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[34]

**B. La Ley Núm. 80 sobre Despido Injustificado**

El despido se ha definido como "la ruptura unilateral, que hace el patrono, del contrato individual de trabajo celebrado con uno o varios trabajadores".[35] Sabido es que esta ruptura contractual, puede conllevar, en numerosas ocasiones, a la pérdida del único medio para obtener los artículos y servicios necesarios para vivir.[36] En consecuencia de lo anterior, se ha establecido como interés

---

[30] *Otero v. Toyota,* supra, a la pág. 728.
[31] *García Reyes v. Cruz Auto Corp.,* supra, a la pág. 894.
[32] *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* 2025 TSPR 56, 215 DPR ___ (2025).
[33] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. ARPe,* supra, a la pág. 264.
[34] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024).
[35] *Díaz v. Wyndham Hotel Corp.,* 155 DPR 364, 374 (2001).
[36] *Íd.*

apremiante del Estado  el regular las relaciones obrero-patronales.[37] A esos fines, se aprobó la Ley Núm. 80, para proteger, de una forma más efectiva, los derechos de los obreros puertorriqueños, otorgar unos remedios más justicieros y desalentar la incidencia del despido injustificado.[38] Entiéndase que, nuestro ordenamiento jurídico no prohíbe el despido de un empleado, si no que busca la protección de los derechos de los trabajadores, para, así, establecer un balance entre las relaciones obrero-patronales.[39]

A tales efectos,  la Ley Núm. 80 dispone que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, el cual trabaje mediante remuneración de alguna clase, contratado sin tiempo determinado y que fuere despedido de su cargo sin justa causa, tendrá derecho a recibir de su patrono: (i) una cantidad equivalente a tres (3) meses de sueldo por concepto de indemnización, siempre y cuando haya culminado el periodo probatorio aplicable, según se dispone en esta Ley, o el periodo probatorio distinto que las partes hayan estipulado, y (ii) una cantidad equivalente a dos (2) semanas de sueldo por cada año completo de servicio.[40]

Es importante mencionar que la Ley Núm. 80 "invierte el orden de la prueba en casos civiles y le impone al patrono el deber de probar *in limine* que el despedido fue justificado".[41] Sin embargo, para que el empleado goce de la referida presunción, debe demostrar que: (i) fue contratado por un comercio, industria u otro negocio; (ii) su contrato era por tiempo indeterminado; (iii) recibía una remuneración por su trabajo, y (iv) fue despedido.[42] Siendo así, si una vez que se presenta toda la prueba se desprende que no hubo

---

[37] *Díaz v. Wyndham Hotel Corp.*, supra, a la pág. 374.
[38] Exposición de motivos de la Ley Núm. 80*, supra.*
[39] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 982 (2022).
[40] Artículo 1 de la Ley Núm. 80, *supra*, 29 LPRA sec. 185a.
[41] *Ortiz Ortiz v. Medtronic* , 209 DPR 759 (2022), citando a  *Romero et als. v. Cabrer Roig et als.*, 191 DPR 643, 652 (2014). (Énfasis omitido).
[42] *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 907 (2011).

ánimo discriminatorio, pero el patrono no logró demostrar justa causa para el despido, el Tribunal debe concluir que fue injustificado.[43] De modo que el empleado será acreedor de los remedios establecidos en la Ley Núm. 80.[44]

Por otro lado, cabe resaltar que el referido estatuto no define lo que constituye un despido injustificado.[45] Ahora bien, sí establece que "[s]e entenderá por justa causa para el despido aquella que no esté motivada por razones legalmente prohibidas y que no sean producto del mero capricho del patrono".[46] En específico, menciona seis (6) razones que se entenderán por justa causa, siempre que afecten el buen y normal funcionamiento de un establecimiento.[47] Entre estas se encuentran las siguientes:

> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.
>
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.
>
> (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.
>
> [. . .].[48]

Ahora bien, la antedicha lista solo pretende ilustrar, de una forma no exhaustiva, del tipo de conducta que constituye motivo justificado para el despido.[49] No obstante, "tal desglose no excluye otra conducta del empleado que, por estar vinculada al buen funcionamiento de la empresa, podría constituir justa causa para el despido." En consideración a lo anterior, se ha entendido que el patrono tiene la facultad de aprobar reglamentos con la finalidad de

---

[43] *Arce v. Martínez*, 146 DPR 215, 232 (1998).
[44] *Íd.*
[45] *Segarra Rivera v. Int'l Shipping et al.*, supra, a la pág. 983.
[46] Artículo 2 de la Ley Núm. 80, *supra*, 29 LPRA sec. 185b.
[47] Artículo 2 de la Ley Núm. 80, *supra*.
[48] *Íd.*
[49] *Srio. Del Trabaja v. G.P. Inds., Inc.*, 153 DPR 223, 244 (2001).

conseguir el buen funcionamiento de la empresa.[50] Ahora bien, estos reglamentos deben ser razonables.[51] Así, pues, se entenderá que las violaciones a la normas del empleo constituyen justa causa para el despido, únicamente, cuando el patrono demuestre: (1) que las reglas establecidas para el funcionamiento del establecimiento son razonables; (2) que le suministró una copia escrita de dichas normas al empleado, y (3) que el empleado las violó en reiteradas ocasiones.[52]

Puntualizamos por otro lado, que se ha resuelto por el Alto Foro que la falta de confianza en el empleado no constituye justa causa para el despedido. Menos aun cuando se trata del mero sentimiento subjetivo del patrono.[53] La falta de confianza solo pude ser justificación para un despedido, cuando se demuestre que el empleado "faltó a sus deberes violando reglas u órdenes del patrono, demostrando negligencia, ineptitud o ineficiencia en su trabajo o incurriendo en fraude, deslealtad grave o en faltas de honradez, etc.".[54]

Por último, amerita mencionar que es norma harta conocida que no se favorece el despido como sanción a la primera falta.[55] Esto solo se permitirá en circunstancias en que la gravedad de la falta "pone en riesgo el orden, la seguridad, la eficiencia y el ambiente de trabajo, afectando de esa forma la buena marcha y funcionamiento normal de la empresa".

### C. La Evaluación y Suficiencia de la Prueba.

Sabido es que, aunque las Reglas de Evidencia no aplican en las vistas administrativas, sus principios fundamentales se utilizan

---

[50] *Rivera v. Pan Pepin*, 161 DPR 68, 689-690 (2004).
[51] *Íd.*, a la pág. 690.
[52] *Jusino et als. v. Walgreens*, 155 DPR 560, 573.
[53] *Arce v. Martínez*, supra, a la pág. 236.
[54] *Arce v. Martínez*, supra, a la pág. 236, citando a citando a *Wolf v. Neckwear Corporation of P.R.*, 80 D.P.R. 537, 541 (1958). (Cita depurada).
[55] *Srio. Del Trabaja v. G.P. Inds., Inc.*, supra, a la pág. 245, citando a *Srio. del Trabajo v. I.T.T.*, 108 DPR 536, 542- 543 (1979).

como guías.[56] Respecto a la evaluación y suficiencia de la prueba, la Regla 110 de Evidencia establece que el juzgador de los hechos tiene el deber de "evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados".[57] Asimismo, la aludida regla, establece que "[p]ara establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza".[58] Más bien, se requiere que la totalidad de la prueba haga más probable cierta conclusión.[59]

Cónsono con lo anterior, la evaluación de la prueba incluye la credibilidad y el valor probatorio que el juzgador le haya dado a la misma. En lo particular, "[l]a función del tribunal al analizar si la evidencia es susceptible de ser creída sólo requiere determinar si la evidencia puede ser creída por una persona razonable y de conciencia no prevenida, sin entrar a dirimir la credibilidad que amerita la prueba presentada".[60] Incluso, según la Regla 110 (d) de Evidencia, basta al juzgador de los hechos, la credibilidad a un solo testigo presentado, por una parte, para dar por acontecido tal hecho.[61] Sobre este particular, nuestro Tribunal Supremo de Puerto Rico estableció que "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz".[62] Por lo tanto, en este contexto, los jueces son quienes están en mejor posición de aquilatar la prueba testifical desfilada, ya que tienen la

---

[56] Sección 3.13 (e) de la Ley Núm. 38, *supra*, 3 LPRA sec. 9653.
[57] 32 LPRA Ap. VI, R. 110.
[58] *Íd.*
[59] *Pereira Suarez v. Jta. Dir. Cond.*, 182 DPR 485, 529 (2011).
[60] *Pueblo v. Colón, Castillo,* 140 DPR 564, 582 (1996).
[61]  32 LPRA Ap. VI, R.110.
[62] *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013).

oportunidad de apreciar de cerca las alocuciones de los testigos, mientras observan sus gestos, contradicciones, dudas, manerismos y titubeos.[63]

III

En el recurso ante nuestra consideración, INSEC ha comparecido tras su inconformidad con el dictamen emitido por la OMA tras declarar *Ha Lugar* la *Querella* incoada por el señor Rosado Vega y, en consecuencia, haberle ordenado compensarle cierta suma de dinero por concepto de despido injustificado.

Mediante sus cuatro (4) señalamientos de error, INSEC nos plantea que fue un error el haber determinado que el despido fue injustificado; al no haber considerado la naturaleza de INSEC como entidad administradora de fondos federales sujeta a estrictos requisitos; al adjudicar de manera arbitraria y caprichosa, no adjudicar el correspondiente peso a la prueba recibida, así como al proceso de disciplina progresiva implementado; y al abusar de su discreción al emitir conclusiones de derecho incompatibles con sus propias determinaciones de hecho y la evidencia sustancial contenida en el expediente administrativo.

Luego de haber evaluado la totalidad de los errores esgrimidos, así como el expediente ante nos, incluyendo las posiciones de las partes, consideramos que los errores esgrimidos son susceptibles de ser discutidos en conjunto, por lo que obraremos como tal.

Según reseñamos, el señor Rosado Vega interpuso una *Querella* en la cual esbozó que, tras trabajar por casi cinco (5) años para INSEC, recibió una carta de despido, el cual adujo fue de manera injustificada por lo que solicitó como remedio que se le adjudicara la correspondiente compensación. Por su parte, INSEC

---

[63] *Pueblo v. Toro Martínez,* 200 DPR 834, 857-858 (2018); *Pueblo v. García Colón I,* 182 DPR 129, 165 (2011).

alegó que el despido estuvo justificado, puesto a que fue producto de un largo proceso de disciplina progresiva el cual incluyó amonestaciones, reprimendas escritas, suspensiones de empleo y sueldo, hasta finalmente su despido. Posteriormente, se celebró la correspondiente vista administrativa en la OMA en la cual se recibió prueba documental y testimonial. Producto de la vista, la OMA emitió la *Resolución y orden* que nos ocupa. Según surge de autos, la OMA declaró *Ha Lugar* la *Querella* y ordenó a INSEC a pagarle la suma de $16,373.08 dólares por concepto de despido injustificado entre otros.

Según expusimos en nuestra exposición doctrinal previa, uno de los principales fines de la revisión judicial de las decisiones administrativas es delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[64] En consecuencia, entre los aspectos que le corresponde examinar a esta Curia es si la agencia concedió un remedio apropiado.[65] Por tal razón, se nos permite intervenir cuando: (i) la decisión no esté basada en evidencia sustancial; (ii) la agencia haya errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal, o (iv) la actuación administrativa lesiona derechos constitucionales fundamentales.[66]

En este punto, conviene puntualizar que, presentado el recurso, mediante *Resolución* del 28 de mayo de 2026, este Tribunal concedió término a INSEC para que, en el término provisto, informara si presentaría una transcripción de la prueba oral y un alegato suplementario. Se le advirtió que, decursado el término, se entendería renunciado y la parte recurrida debía presentar su

---

[64] *Empresas Ferrer v. ARPe,* supra, a la pág. 264.

[65] *Batista, Nobbe v. Jta. Directores*, supra, a la pág. 217, citando a *Asoc. Fcias. V. Caribe Specailty et al. II,* supra, a la pág. 940; *Mun. de San Juan v. JCA,* supra, a las págs. 279-280.

[66] *The Sembler Co. v. Mun. de Carolina,* supra, a la pág. 822, citando a *Empresas Ferrer v. ARPe,* supra, a la pág. 264.

alegato en oposición. Superado el término provisto sin que INSEC compareciera, el 2 de junio de 2026, emitimos una *Resolución* mediante la cual dimos por renunciada la presentación de la transcripción de la prueba oral, así como del alegato suplementario y ordenamos a la parte recurrida a presentar su alegato en oposición.

Con lo anterior en mente, puntualizamos que los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[67] Lo anterior, únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[68] A esos efectos, quien alegue ausencia de evidencia sustancial tendrá que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[69] En consecuencia, si la parte afectada no demuestra lo anterior, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[70]

Por otra parte, sabido es que, aunque las Reglas de Evidencia no aplican en las vistas administrativas, sus principios fundamentales se utilizan como guías.[71] Respecto a la evaluación de la prueba, esta incluye la credibilidad y el valor probatorio que el juzgador le haya dado a la misma.[72] En este contexto, los jueces son quienes están en mejor posición de aquilatar la prueba testifical desfilada, ya que tienen la oportunidad de apreciar de cerca las

---

[67] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 892.
[68] *Otero v. Toyota*, supra, a la pág. 727.
[69] *Gutiérrez Vázquez v. Hernández y otros*, supra, a la pág. 244.
[70] *Otero v. Toyota*, supra, a la pág. 728.
[71] Sección 3.13 (e) de la Ley Núm. 38, *supra*, 3 LPRA sec. 9653.
[72] *Pueblo v. Colón, Castillo*, 140 DPR 564, 582 (1996).

alocuciones de los testigos, mientras observan sus gestos, contradicciones, dudas, manerismos y titubeos.[73]

Tras evaluar minuciosamente los autos ante nuestra consideración, así como las determinaciones de hechos emitidas por la OMA, colegimos que las determinaciones de hechos consignadas en la *Resolución* corresponden a la credibilidad y el valor probatorio que la OMA otorgó a la evidencia presentada por las partes. Nos es forzoso concluir que INSEC no logró establecer que obraba en el expediente otra evidencia que ameritara resolver el caso de manera distinta. Esto, principalmente debido a que, según expresamos, este no presentó una prueba oral de la vista administrativa para la consideración de este Tribunal. Es norma harta conocida ante la ausencia de una prueba oral, este foro apelativo no cuenta con los elementos para descartar la apreciación razonada y fundamentada de la prueba que realizó la agencia recurrida. De manera que, nos es forzoso, en este caso, tomar como ciertas y correctas las determinaciones de hecho realizadas por OMA.

Por otra parte, somos del criterio que la OMA no erró al concluir que el despido del señor Rosado Vega fue injustificado. La evidencia sustancial que obra en el expediente demuestra que el despido respondió al alegado incumplimiento de unas directrices impartidas para completar los expedientes relacionados con la entrega de ayudas económicas ocurrida el 4 de junio de 2022. Sin embargo, de la prueba no surge que el señor Rosado Vega se negó a cumplir con las tareas encomendadas ni desplegó una conducta contumaz, temeraria, insubordinada o negligente que justificara su despido. Por el contrario, se desprende de los autos que el señor Rosado Vega intentó cumplir con la encomienda dentro de sus capacidades y limitaciones, pero enfrentó circunstancias ajenas a

---

[73] *Pueblo v. Toro Martínez,* 200 DPR 834, 857-858 (2018); *Pueblo v. García Colón I,* 182 DPR 129, 165 (2011).

su voluntad, incluyendo la falta de colaboración del Municipio para suministrar la información necesaria para levantar los expedientes; la suspensión de empleo y sueldo impuesta por la INSEC durante parte del término concedido para completar la labor; y diversos periodos de ausencia por recomendación médica debido a su condición de salud. A pesar de ello, INSEC optó por despedir al señor Rosado Vega sin demostrar que la medida guardaba proporción con la alegada falta ni que existiera una razón justificada para ello. Más aún, la prueba reflejó que la empresa no contaba con protocolos formales para la entrega de ayudas económicas al momento de ocurrir los hechos y que el protocolo invocado por INSEC fue adoptado aproximadamente un mes antes del despido del señor Rosado Vega, es decir, luego haberse cometido la alegada falta. Ante tales circunstancias, la OMA concluyó correctamente que INSEC no logró rebatir la presunción de despido injustificado ni satisfacer el peso probatorio que le imponía la Ley Núm. 80.[74]

Precisa reseñar que, del expediente ante nuestra consideración surge evidencia sustancial que sostiene el dictamen objeto de estudio. No pudimos constatar que exista algo en el expediente que nos lleve a concluir que lo actuado por la OMA constituya un abuso de discreción, o que haya actuado de forma caprichosa, arbitraria o ilegal. En contrario, sostenemos que la OMA resolvió cónsono a las determinaciones de hecho esgrimidas y al marco legal. A tenor, disponemos que INSEC no logró rebatir la presunción de corrección que ampare la determinación recurrida. Tampoco quedamos persuadidos con su lo esgrimido en el recurso. Dado a todo lo anterior, colegimos que los errores esgrimidos no fueron cometidos. En consecuencia, la *Resolución y orden* debe ser *confirmada.*

---

[74] Ley Núm. 80, *supra*, 29 LPRA sec. 185a *et seq.*

IV

Por los fundamentos que anteceden, se *confirma* la *Resolución y orden* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones